# 14-1224-CV

IN THE

## United States Court of Appeals for the Second Circuit

Anh Nguyet Tran, Christina T. Soulamany & Lai Somchanmavong, Colleen Dwyer, Elaine Phan, Hoa V. Nguyen, Hoa V. Nguyen, Huan N. Tran, Hung V. Nguyen, Kay Aphayvong, Kim-Thuy Nguyen, Mia L. Pham, Minh A. Trinh, Nhieu V. Tran, Patricia Gunness, Patricia S. Adkins fka Patricia S. Olson, Peter Delamos, Peter Ha & Tina Le, Phokham Soulamany & Phetsanou Soulamany, Thai Christie & Sequoia Holdings LLC, Thuy-Trang Nguyen, Tuy T. Hoang & Thomas T. Hoang, Tuyen T. Thai, Tuyetlan T. Tran, Uyen T. Thai & Thong Ngo, Van Le fka Van T. Nguyen,

PLAINTIFFS/APPELLANTS,

V.

Bank of New York now known as Bank of New York Mellon by Merger and/or acquisition, ~continued additional Defendant/Appellee parties listed on inside cover ~

DEFENDANTS/APPELLEES.

*On Appeal from the United States District Court
for the Southern District of New York
No. 1:13-cv-00580 (Hon. Robert P. Patterson, Jr.)*

**BRIEF FOR DEFENDANTS-APPELLEES THE BANK OF NEW YORK MELLON, as Trustee; US BANK NATIONAL ASSOCIATION, as Trustee; WELLS FARGO BANK NATIONAL ASSOCIATION, as Trustee; and HSBC BANK USA NATIONAL ASSOCIATION, as Trustee**

Dated: October 14, 2014

| | |
|---|---|
| **DORSEY & WHITNEY LLP** | **DORSEY & WHITNEY LLP** |
| ERIC R. SHERMAN | CHRISTOPHER G. KARAGHEUZOFF |
| 50 South 6th Street, Suite 1500 | 51 West 52nd Street |
| Minneapolis, MN 55402-1498 | New York, New York 10019 |
| (612) 340-2600 | (212) 415-9200 |

*Attorneys for Defendants-Appellees*

*~continued from cover page 1~*

Deutsche Bank National Trust Company, HSBC Bank USA National Association, US Bank National Association, Chase Bank USA National Association, Wells Fargo Bank National Association, American Home Mortgage Assets AHMA 2006-1, Securitized Asset Backed Receivables SABR 2005-HE1, Impac Secured Assets Corp IMSA 2006-5, Countrywide Alternative Loan Trust CWALT 2005-17, Countrywide Home Loans CWHL 2007-HYB2, Countrywide Alternative Loan Trust CWALT 2006-OA6, Countrywide Home Loans CWHL 200-HYB6, Citigroup Mortgage Loan Trust Inc. CMLTI 2007-6, IXIS Real Estate Capital Trust IXIS 2006-HE3, Lehman Mortgage Trust LMT 2007-6, Merrill Lynch Mortgage Investors Trust MLMI 2006-HE6, Countrywide Alternative Loan Trust CWALT 2005-58, GSAA Home Equity Trust GSAA 2006-12, Countrywide Home Loans CWHL 2007-HY6, Citigroup Mortgage Loan Trust Inc. CMLTI 2005-11, Fremont Home Loan Trust FHLT 2005-1, Merrill Lynch Alternative Note Asset MANA 2007-A2, First Franklin Mtg. Loan Asset Back FFML 2005-FF9, Countrywide Home Loans CWHL 2007-3, Countrywide Asset-Backed Certificates CWL 2007-S2, Countrywide Alternative Loan Trust CWALT 2006- OA19, Countrywide Alternative Loan Trust CWALT-2005-22T1, Bear Stearns ALT-A Trust BALTA 2006-3; Countrywide Home Loans CWHL 2006-HYB5, Credit Suisse Mtg Capital Certificate, Countrywide Alternative Loan Trust CWALT 2006-29T1, American Home Mortgage Assets AHMA 2006-1, CHL Mortgage Pass-Through Trust CWHL 2007-HYB2, Alternative Loan Trust CWALT 2006-OA, RALI Series 2006-QS8 Trust RALI 2006-QS8, CHL Mortgage Pass-Through Trust CWHL 2005-HYB6, Lehman Mortgage Trust LMT 2007-6, CWALT, Inc., Alternative Loan Trust CWALT 2005-58; Opteum Mortgage Acceptance Corp. OMAC 2005-1, CHL Mortgage Pass-Through Trust CWHL 2007-HY6, First Franklin Mortgage Loan Trust FFML 2007-FF2, First Franklin Mortgage Loan Trust FFML 2007-FFC, CHL Mortgage Pass-Through Trust CWL 2005-11, CHL Mortgage Pass-Through Trust CWHL 2007-3, CWHEQ Home Equity Loan Trust CWL 2007-S2, Lehman XS Trust Mgt. Pass- Through Cert. LXS 2005-2, GreenPoint Mortgage Funding Trust GPMF 2005-AR4, Alternative Loan Trust CWALT 2006-OA19, Banc of America Funding BAFC 2006-6; CWALT, Inc., Alternative Loan Trust CWALT-2005-22T1, CSMC Mortgage-Backed Trust CSMC 2006-5, Alternative Loan Trust CWALT 2006-29T1 GSAMP Trust GSAMP 2006-HE1, First Franklin Mortgage Loan Trust FFML 2005-FF9,

DEFENDANTS/APPELLEES.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellees state as follows:

U.S. Bank National Association is a wholly owned subsidiary of U.S. Bancorp, a publicly held corporation.  No publicly held corporation owns 10 percent or more of the stock of U.S. Bancorp.

The Bank of New York Mellon is a wholly owned subsidiary of The Bank of New York Mellon Corporation, a publicly held corporation.  No publicly held corporation owns 10 percent or more of the stock of The Bank of New York Mellon Corporation.

Wells Fargo Bank National Association is a wholly owned subsidiary of Wells Fargo & Company, a publicly held corporation.  No publicly held corporation owns 10 percent or more of the stock of Wells Fargo & Company.

HSBC Bank USA, National Association is a wholly owned subsidiary of HSBC USA, Inc., which is indirectly owned by HSBC Holdings plc, a publicly traded corporation.  No publicly held corporation owns 10 percent or more of the stock of HSBC Holdings plc.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE.................................................................2

I.   Nature Of The Case .......................................................................2

II.  Statement Of Facts And Course Of Proceedings Below................2

    A.   The Parties And Background ..................................................2

    B.   The Amended Complaint .......................................................3

    C.   The Trustees Move To Dismiss The Amended Complaint On
         Various Grounds, Including Lack Of Standing ....................5

    D.   The District Court Grants The Trustees' Motion To Dismiss..............5

SUMMARY OF THE ARGUMENT ........................................................7

ARGUMENT .........................................................................................10

I.   Jurisdiction And Standard Of Review.........................................10

II.  Standard For A Motion To Dismiss .............................................10

III. The District Court Did Not Err In Dismissing The Amended
    Complaint On The Basis Of Prudential Standing .........................11

    A.   As A Prudential Matter, Only The Intended Beneficiary Of A
         Trust Has Standing To Assert Claims Based Upon The Alleged
         Violation Of The Trust.........................................................11

         1.   New York Trust Law Provides No Basis For Plaintiffs'
              Standing Argument .................................................12

         2.   Plaintiffs' Reliance On New York Estates, Powers and
              Trusts Law § 7-2.4 Is Misplaced...........................16

         3.   Plaintiffs' Other Arguments Are Unavailing..........19

IV.   Even Assuming Plaintiffs' Have Prudential Standing, the District Court Did Not Err in Dismissing The Amended Complaint Because Its RICO Claims Are Fatally Flawed .........................................................22

    A.   Plaintiffs Failed To Allege An Injury Or Causation Sufficient To Establish RICO Standing .............................................................22

         1.   Plaintiffs Have Not Suffered A Clear And Definite Injury ......23

         2.   Plaintiffs Have Not Alleged Proximate Causation ..................25

    B.   Alternatively, The Court Should Affirm The Dismissal Of the Amended Complaint Because It Fails To State A Viable Claim ........27

         1.   Plaintiffs Fail To Allege That Any Defendant Engaged In Any Predicate Act Of "Racketeering," Much Less The "Pattern Of Racketeering" Required To State A Viable RICO Claim .....................................................................28

         2.   Plaintiffs Fail To Allege A RICO "Enterprise" .......................31

         3.   Plaintiffs Fail To Allege A Viable RICO Conspiracy Claim .......................................................................................34

         4.   Plaintiffs' RICO Claims Are Untimely ...................................36

V.   Alternatively, The Court Should Affirm Dismissal Of All Plaintiffs Except Anh Nguyet Tran On The Basis Of Improper Permissive Joinder Under Rule 20 Of The Federal Rules Of Civil Procedure ...............38

CONCLUSION ...............................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*39 Cortlandt Street Corp. v. Meyer Lambert*,
    205 N.Y.S. 161 (N.Y. App. Div. 1924) ............................................................. 15

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) .............................................................. 38

*Adams v. U.S. Bank, N.A.*,
    2013 WL 5437060 (E.D.N.Y. Sept. 27, 2013) ................................................. 38

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) .......................................................................................... 36

*Allison & Ver Valen Co. v. McNee*,
    9 N.Y.S.2d 708 (N.Y. Sup. Ct. 1939) .............................................................. 15

*Am. Med. Assoc. v. United Healthcare Corp.*,
    588 F. Supp. 2d 432 (S.D.N.Y. 2008) .............................................................. 28

*Anatian v. Coutts Bank (Switzerland) Ltd.*,
    193 F.3d 85 (2d Cir. 1999) ............................................................................... 28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 10, 22

*Baisch v. Gallina*,
    346 F.3d 366 (2d Cir. 2003) ............................................................................. 26

*Banares v. Wells Fargo Bank*,
    2014 WL 985532 (N.D. Cal. Mar. 7, 2014) ..................................................... 18

*Bankers Trust Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir. 1988) ........................................................................... 37

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 10, 22, 24

*Berezovskaya v. Deutsche Bank Nat'l Trust Co.*,
    2014 WL 4471560 (E.D.N.Y. Aug. 1, 2014) ................................................... 18

*Bernstein v. Misk*,
948 F. Supp. 228 (E.D.N.Y. 1997) ....................................................27

*Boscowitz v. Held*,
43 N.Y.S. 818 (N.Y. Sup. Ct. 1896) ................................................15

*Boyle v. United States*,
556 U.S. 938 (2009) ........................................................................34

*Boza v. U.S. Bank Nat'l Assoc.*,
2013 WL 5943160 (C.D. Cal. Oct. 28, 2013) .................................18

*Butler v. Deutsche Bank Trust Co. Am.*,
748 F.3d 28 (1st Cir. 2014) ............................................................14

*Casault v. Fed. Nat'l Mortg. Ass'n*,
915 F. Supp. 2d 1113 (C.D. Cal. Nov. 26, 2012) ...........................26

*Cashman v. Petrie*,
201 N.E. 24 (N.Y. 1964) .................................................................13

*Caswell v. JP Morgan Chase Bank, N.A.*,
500 F. App'x 580 (9th Cir. 2012) ...................................................26

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) ........................................................................32

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ............................................28

*Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*,
943 F.2d 220 (2d Cir. 1991) ...........................................................22

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
271 F.3d 374 (2d Cir. 2001) ...........................................................23

*In re Cook*,
457 F.3d 561 (6th Cir. 2006) ..........................................................14

*Cornelius v. Bank of Am., N.A.*,
2014 WL 4747332 (11th Cir. Sept. 25, 2014) ................................14

*Dauenhauer v. Bank of N.Y. Mellon*,
562 F. App'x 473 (6th Cir. 2014) ..................................................14

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) ........................................................29

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ...................................................11, 23

*Discon, Inc. v. NYNEX Corp.*,
93 F.2d 1055 (2d Cir. 1996), *rev'd on other grounds*, 552 U.S. 128
(1998) ...........................................................................................35

*Dye v. Lincoln Rochester Trust Co.*,
334 N.Y.S.2d 402 (N.Y. App. Div. 1972) .......................................15

*Elsevier, Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010) ...............................32, 34, 36

*English v. McIntyre*,
51 N.Y.S. 697 (N.Y. App. Div. 1898) ............................................18

*In re Estate of McManus*,
390 N.E.2d 773 (N.Y. 1979) ....................................................13, 17

*First Capital Asset Mgt. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) ...................................................33, 35

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994) ..........................................................27

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
2013 WL 2444036 (D.N.J. June 4, 2013) .......................................26

*Glaski v. Bank of Am., Nat'l Assoc.*,
160 Cal. Rptr. 3d 449 (Cal. Ct. App. 2013) ...................................17

*Grimes v. Fremont Gen. Corp.*,
785 F. Supp. 2d 269 (S.D.N.Y. 2011) ............................................30

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990) ...........................................................35

*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 (2010)..............................................................................25

*Hine v. Hine*,
   103 N.Y.S 535 (N.Y. App. Div. 1907) ..............................................18

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992)..........................................................................25

*In re Jepson*,
   2014 WL 1884719 (N.D. Ill. May 9, 2014).......................................18

*Kalie v. Bank of Am. Corp.*,
   297 F.R.D. 552 (S.D.N.Y. 2013).................................................38, 39

*Karnatcheva v. JP Morgan Chase Bank, N.A.*,
   704 F.3d 545 (8th Cir. 2013) ............................................................14

*In re Kekauoha-Alisa*,
   674 F.3d 1083 (9th Cir. 2012) ..........................................................26

*King v. Talbot*,
   40 N.Y. 76 (N.Y. 1869) ....................................................................17

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003) ...............................................23, 25, 27

*Livonia Prop. Holdings, L.L.C. v. Farmington Road Holdings, L.L.C.*,
   717 F. Supp. 2d 724 (E.D. Mich.), *aff'd*, 399 F. App'x 97 (6th Cir.
   2010) .................................................................................................23

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395 (2d Cir. 2014) .............................................................15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................11, 22

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998) ...............................................................37

*In re Mills*,
   50 N.Y.S. 966 (N.Y. Sup. Ct. 1891).................................................15

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ...................................................................30, 31

*Mooney v. Madden*,
  597 N.Y.S.2d 775 (N.Y. App. Div. 1993), *lv. to appeal dismissed*,
  632 N.E.2d 463 (1993) ..................................................................................17

*Moss v. Morgan Stanley*,
  719 F.2d 5 (2d Cir. 1983) ..............................................................................29

*Moss v. Wells Fargo Bank, Nat'l Assoc.*,
  2013 WL 8179714 (E.D. Mich. Jan. 22, 2013) .................................................18

*Myrlie v. Countrywide Bank*,
  775 F. Supp. 2d 1100 (D. Minn. 2011).............................................................26

*Naversen v. Gaillard*,
  831 N.Y.S.2d 258 (N.Y. App. Div. 2007) .........................................................13

*In re Pepi*,
  No. 266193, 1996 WL 34571234 (N.Y. Sur. June 13, 1996)...........................15

*Premium Mortgage Corp. v. Equifax, Inc.*,
  583 F.3d 103 (2d Cir. 2008) ..........................................................................11

*Priessenger v. Sharp*,
  14 N.Y.S. 372 (N.Y. Gen. Term 1891)............................................................15

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
  757 F.3d 79 (2d Cir. 2014) .....................................................................*passim*

*Reinagel v. Deutsche Bank Nat'l Trust Co.*,
  735 F.3d 220 (5th Cir. 2013) .........................................................................14

*Robinson v. Select Portfolio Servicing, Inc.*,
  522 F. App'x 309 (6th Cir. 2013) ....................................................................14

*Schaefer-Ung v. U.S. Bank Nat'l Assoc.*,
  2014 WL 2619555 (Mass. Land Ct. June 20, 2014).........................................18

*Sedima, S.P.R.L. v. Imrex Co.*,
  741 F.2d 482 (2d Cir. 1984), *rev'd on other grounds*, 473 U.S. 479
  (1985)............................................................................................................28

*Smith v. Litton Loan Servicing, LP*,
    517 F. App'x 395 (6th Cir. 2013) ................................................................14

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ........................................................................30

*Suarez v. DeMontigny*,
    37 N.Y.S. 503 (N.Y. App. Div. 1896) .........................................................15

*Tran, et al., v. Bank of New York, et al.*,
    No. 13-cv-580 (March 24, 2014) ...................................................................2

*Trane Co. v. O'Connor Sec.*,
    718 F.2d 26 (2d Cir. 1983) ..........................................................................28

*Velasco v. Sec. Nat'l Mortg. Co.*,
    823 F. Supp. 2d 1061 (D. Haw. 2011) .........................................................23

*Warth v. Seldin*,
    422 U.S. 490 (1975) .....................................................................................11

*Washburn v. Rainier*,
    134 N.Y.S. 301 (N.Y. App. Div. 1907) .......................................................18

*Wells Fargo Bank, Nat'l Assoc. v. Erobobo*,
    39 Misc.3d 1220(A) (N.Y. Sup. Ct. 2013) ..................................................17

*Wolff v. Bank of New York Mellon*,
    997 F. Supp. 2d 964 (D. Minn. 2014) ..........................................................18

*In re Zarnel*,
    619 F.3d 156 (2d Cir. 2010) ........................................................................16

**Statutes**

18 U.S.C. § 391 ...................................................................................................29

18 U.S.C. § 1343 .................................................................................................29

18 U.S.C. § 1961 .................................................................................................29

18 U.S.C. § 1961(1) .............................................................................................29

18 U.S.C. § 1961(4) .......................................................................................32, 34

18 U.S.C. § 1962(c) ..............................................................................28, 29, 32, 35

26 U.S.C. § 860, *et seq*...............................................................................20

28 U.S.C. § 1291 ...............................................................................10

New York Estates Powers and Trusts Law § 7-1.18 ..............................................19

New York Estates, Powers and Trusts Law § 7-2.4 .......................................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* .............................................................................*passim*

**Other Authorities**

106 N.Y. Jur. 2d *Trusts* § 431 (2013) .....................................................18

Talcott Franklin & Thomas Nealon III, Mort. & Asset Based Sec. Litig. Handbook, §§ 5:111-5:112 (2013) .................................................4

Fed. R. Civ. P. 8(a)..............................................................................10

Fed. R. Civ. P. 9(b) .............................................................................30

Fed. R. Civ. P. 12 .......................................................................1, 5, 27

Fed. R. Civ. P. 20 ...........................................................................9, 38

## STATEMENT OF THE ISSUES

To resolve this appeal, the Court need consider only one issue:

> Whether the district court erred by concluding that, under New York trust law, non-beneficiaries to a trust lack standing to enforce the trust's terms or challenge the actions of the trustee?

Because the district court did not err, this Court should affirm.

In the event, however, that the Court concludes that the district court erred in its interpretation of New York trust law, the Court must confront at least four other core issues, each of which provides an independent basis for affirmance. These issues are:

(1) Whether the amended complaint satisfies the heightened standing requirements applicable to claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.?

(2) Whether the amended complaint contains sufficient factual material to state a viable RICO claim under Federal Rule of Civil Procedure 12(b)(6)?

(3) Whether the amended complaint is barred under RICO's four-year statute of limitations?

(4) Whether the amended complaint should be dismissed as to all Plaintiffs, with the sole exception of Anh Nguyet Tran, on the ground that the other Plaintiffs were misjoined to the action?

**STATEMENT OF THE CASE**

I.      **Nature Of The Case**

Plaintiffs-Appellants ("Plaintiffs") appeal the March 24, 2014 decision of

the United States District Court for the Southern District of New York (Hon.

Robert P. Patterson, Jr.) in *Tran, et al., v. Bank of New York, et al.*, No. 13-cv-580

(March 24, 2014), SA1-15,[1] which dismissed Plaintiffs' amended complaint for

lack of standing.

II.     **Statement of Facts and Course of Proceedings Below**

A.      **The Parties and Background**

Plaintiffs are 39 borrowers that took out mortgage loans that are secured by

real properties.  A49-50, 56-58, 72-75.  Plaintiffs allege that their mortgage loans

were subsequently securitized into residential mortgage-backed securities

("RMBS") trusts formed under and governed by New York law.  A49-50, 52, 55.

The Defendants-Appellees ("Defendants") are (1) the trustees of the RMBS trusts

that own and hold Plaintiffs' mortgage loans for the benefit of the certificate-

holders of the RMBS trusts at issue in this case (the "Trustees"); and (2) the 37

separate RMBS trusts at issue (the "Trusts").[2]  A50-52, 54.

---

[1]   "SA_" refers to a page in the special appendix filed by Plaintiffs on
September 17, 2014.  "A_" refers to a page in the appendix filed on September 17,
2014.  "App Br. _" refers to a page in Plaintiffs' opening brief, as corrected,
September 17, 2014.

[2]   Although Plaintiffs named the Trusts as defendants in this case, as the district
court noted, trusts are not entities that can be sued under New York law, and

Plaintiffs allege that each of the Trusts was formed pursuant to a Pooling and Servicing Agreement ("PSA"). A51-52. Plaintiffs' mortgage loans were securitized between 2005 and 2007. A51-52, 54. Plaintiffs allege that their mortgage loans have since been subject to foreclosure proceedings and/or that Defendants have collected payments on those mortgage loans. A49-50, 56-60.

### B. The Amended Complaint

In April 2013, Plaintiffs filed their three-count amended complaint, alleging that the Defendants violated—and conspired to violate—RICO. A56-66. Plaintiffs sought monetary, injunctive, and declaratory relief. A63-65.

Specifically, Plaintiffs allege that Defendants claimed to be the owners of Plaintiffs' mortgage loans but that Defendants never actually became the proper owners of those mortgage loans as the result of alleged failures to comply with the PSAs pursuant to which the loans were securitized. A57-59. Plaintiffs allege that Defendants did not own Plaintiffs' loans because parties to the PSAs breached those agreements by failing to timely deliver trust assets (consisting of Plaintiffs' promissory notes and mortgages) to each Trustee by the closing date identified in

---

litigation must instead by brought against the trustees of those trusts in their capacities as such. SA2. Accordingly, this brief is filed only on behalf of Defendants-Appellees The Bank of New York Mellon, as trustee; U.S. Bank National Association, as trustee; Wells Fargo National Association, as trustee; and HSBC Bank USA National Association, as trustee. The remaining Defendant-Appellee, Deutsche Bank National Trust Company, is filing a separate brief.

each PSA.  A57-60.  Plaintiffs allege that, because the provisions of the PSAs were violated, the Trusts were never validly formed.  A58.

Plaintiffs do not allege that they do not owe payments on their loans, that they paid to Defendants any more than they owed on the loans, that they ever received a demand for payment from any entity other than Defendants, that there was ever any threat or institution of foreclosure proceedings against them by any entity other than Defendants, or that they should not have been foreclosed upon. A56-65.  Rather, according to Plaintiffs, the alleged failure to comply with the terms of the PSAs means that "each of [the Defendants] had no standing to enforce the loan, was not a real party in interest to the loan, had no standing, was not the owner of the loan, and that the trust has not be[en] formed because of violation of the PSA and of the applicable law governing the actions of the trustees and the creation of the trust."[3]  A60.  Plaintiffs further allege that Defendants "knew that each of them did not own" the Plaintiffs' mortgage loans and "fraudulently represented that the conditions [set forth in the PSAs] were met and/or concealed

_____

[3]   Although Plaintiffs allege that the Trustees collect their mortgage loan payments and execute foreclosure proceedings, that premise is incorrect.  As the district court noted, mortgage loan servicers "'collect the debt, service payments on the loans and distribute the same to the investors'" and "'are responsible for enforcing the terms of a defaulted securitized loan.  This responsibility may include . . . foreclosing on the property.'"  SA3 (quoting Talcott Franklin & Thomas Nealon III, Mort. & Asset Based Sec. Litig. Handbook, §§ 5:111-5:112 (2013)).

4

the fact that they were not met." A60. Such conduct, Plaintiffs allege, violated RICO.

### C. The Trustees Move to Dismiss the Amended Complaint on Various Grounds, Including Lack of Standing

In August 2013, the Trustees moved to dismiss the amended complaint, arguing that (1) Plaintiffs lacked standing to assert claims based on breaches of the PSAs; (2) the amended complaint failed sufficiently to allege a RICO violation or conspiracy to commit a RICO violation; (3) any RICO-related claim was barred by the applicable statute of limitations; (4) the amended complaint's third count failed to identify a substantive claim for relief; and (5) Plaintiffs were misjoined. SA2, 5.

In response, Plaintiffs argued that they have standing to challenge alleged breaches of the PSAs (1) insofar as such breaches rendered the trusts void under New York trust law, and, apparently in the alternative, (2) insofar as Plaintiffs may be third-party beneficiaries of the PSAs, which Plaintiffs argued is a "fact-laden issue" inappropriate for disposition on a Rule 12 motion. SA8-11. Plaintiffs also argued that they pleaded their RICO claim with the requisite specificity; that the district court can award injunctive relief; and that the numerous Plaintiffs were properly joined.

### D. The District Court Grants the Trustees' Motion to Dismiss

After briefing and oral argument, the district court granted the motion to dismiss, holding that Plaintiffs lacked standing based on the prudential principle

that a party may assert only its own legal rights and cannot rest its claim to relief on the legal rights or interests of third parties.[4]  SA1-15.  In particular, after a "careful review of the entire record," the district court joined the weight of the caselaw around the country and concluded that Plaintiffs could not establish standing because they had not alleged that they were parties to, or intended third-party beneficiaries of, the PSAs.  SA6-8, 11-12.  The district court also rejected Plaintiffs' argument that, because of Defendants' alleged breaches of the PSAs (here, the alleged transfer of ownership of mortgage loans after the closing dates specified in the PSAs), New York law conferred standing upon Plaintiffs, as non-parties and non-beneficiaries, to challenge the assignments.  *Id*.  The district court explained that alleged noncompliance with the terms of a PSA renders an assignment merely voidable, not void.  SA9.  The district court further concluded that dismissal with prejudice was appropriate "because the theory underlying the Plaintiffs' claims is untenable."  SA12.

This appeal followed.

---

[4]   The district court did not "reach the other issues raised" by the motion to dismiss because "the standing issue is dispositive."  SA12.

6

## <u>SUMMARY OF THE ARGUMENT</u>

This Court recently concluded that, under New York trust law, mortgagors are not beneficiaries of RMBS trusts created by PSAs and that mortgagors therefore lack prudential standing to challenge alleged defects in the performance of those PSAs. *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 87-90 (2d Cir. 2014). This conclusion—a conclusion by which the panel is bound—is dispositive of Plaintiffs' present appeal, an appeal that plainly invites the Court to disregard its precedent. The Court need go no further to affirm the district court's dismissal of Plaintiffs' amended complaint for lack of standing.

In an attempt to circumvent well-established New York trust law, Plaintiffs argue that non-beneficiaries may challenge conduct that would void a trust, invoking New York Estates, Powers and Trusts Law ("EPTL") § 7-2.4, which provides in relevant part that "every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by . . . law, is void." But this Court in *Rajamin* rejected this same argument, observing that "[w]here the challengers to a trustee's actions are not beneficiaries, and hence lack standing, the court need not decide whether the conduct of the trustee comported with the terms of the trust." *Rajamin*, 757 F.3d at 88 (internal quotation marks omitted). And even if violations of a PSA were relevant to standing, EPTL § 7-2.4 does not change the analysis. As the *Rajamin* Court explained, "the weight of New York authority is contrary to

7

plaintiffs' contention that any failure to comply with the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law." 757 F.3d at 90. Plaintiffs' reliance on EPTL § 7.2-4 is thus misplaced; it does not give them standing to challenge PSAs to which they are neither parties nor beneficiaries.

Alternatively, even if the Court disagrees with the district court's prudential-standing holding, the Court may affirm for any other reason supported by the record. Here, there are several other material defects in the amended complaint, any one of which provides an independent basis for affirmance. For example, there are insufficient allegations of an injury to "business or property," much less the necessary causal nexus with an alleged RICO violation, to establish the heightened standing requirements applicable to a RICO claim.

Similarly, the amended complaint fails to state viable RICO claims because it lacks sufficient facts to identify (1) a "racketeering" activity; (2) the necessary "pattern" of such activities, or (3) the existence of a separate RICO "enterprise." Even if all of those elements of a RICO claim were alleged with the requisite factual detail, the amended complaint reveals that Plaintiffs' RICO claims are untimely under the statute of limitations.

Finally, even assuming that the Court determined that Plaintiffs have standing and that the amended complaint states a viable RICO claim, the Court

should nonetheless direct the district court to drop from the case all Plaintiffs, with the exception of Plaintiff Anh Nguyet Tran, on the basis that they were misjoined under Rule 20 of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.     Jurisdiction and Standard of Review

The district court's dismissal of Plaintiffs' amended complaint with prejudice is a final, appealable decision.  The Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 1291.  The Court reviews the district court's legal conclusion as to a plaintiff's standing to sue *de novo*.  *See Rajamin*, 757 F.3d at 84-85.  But if the district court resolved disputed facts in ruling upon standing, this Court will accept those findings unless they are clearly erroneous.  *See id*.

### II.     Standard for a Motion to Dismiss

Under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court of the United States has explained that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint's allegations must show more than "a sheer possibility that a defendant has acted unlawfully."  *Id*.  The Court should assume well-pleaded facts alleged in the complaint are true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at  555).  A complaint's legal conclusions are not entitled to deference.  *See id*.

10

**III.** **The District Court Did Not Err in Dismissing the Amended Complaint on the Basis of Prudential Standing**

The question of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The plaintiff bears the burden of establishing standing. *See Rajamin*, 757 F.3d at 84 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) and *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2008)). Plaintiffs lack standing to raise RICO claims arising from the purported breach or contravention of the PSAs. Accordingly, the Court should affirm.[5]

**A.** **As a Prudential Matter, Only the Intended Beneficiary of a Trust Has Standing to Assert Claims Based Upon the Alleged Violation of the Trust**

To satisfy one of the principles of prudential standing, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 509. Here, the district court properly dismissed Plaintiffs' amended complaint because it was premised on the rights of third parties. As was the case with the plaintiffs in *Rajamin*, Plaintiffs' claims are based on the notion that Defendants do not own and

---

[5]   Standing, of course, has two components, constitutional and prudential. RICO standing, however, is more "rigorous" than constitutional standing. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). Accordingly, we limit our discussion in this section to prudential standing and discuss RICO (and constitutional) standing in section IV.A, below.

11

hold Plaintiffs' mortgage loans (and thus do not have the right to foreclose or otherwise collect on those loans) because of alleged noncompliance with the provisions of the applicable PSAs.

      1.    New York Trust Law Provides No Basis for Plaintiffs' Standing Argument

     Although not entirely clear from Plaintiffs' brief, it appears that Plaintiffs contend that they have standing to bring their claims based on New York law governing trusts. App. Br. at 7, 11-14. To be sure, Plaintiffs do not contend that they are parties to the PSAs or beneficiaries of the trusts created by the PSAs.[6] Rather, Plaintiffs assert that "*a third party that… is not a beneficiary* of the trust can raise claims and defenses against the trustee for acts of the trustee in contravention of the trust indenture." *Id*. at 7 (emphasis added); *see also id*. at 14 ("Therefore determining the issue of the contravention of the trust indenture is not contingent upon privity of contract, nor on being an intended third-party

---

[6]   In the district court, Plaintiffs appeared to assert, evidently in the alternative, that they *may* qualify as third-party beneficiaries, presumably under a theory grounded in the law of contracts (as opposed to the law of trusts). SA11-12. Plaintiffs have not pressed that argument in their brief to this Court and, in fact, argue at some length that contract principles have *no* bearing on the issue, *see* App. Br. at 12-16. We do not therefore address the argument further, other than to note that, even if Plaintiffs had made a contract-based argument, the Court in *Rajamin* considered—and rejected—the notion that the law of contracts could support a mortgagor's standing to challenge a PSA. *See* 757 F.3d at 86-87 (considering a "breach-of-contract theory" and concluding that mortgagors do not qualify as third-party beneficiaries to PSAs).

beneficiary.").  This argument is unpersuasive for several reasons, which we address in turn.

The most compelling reason to reject Plaintiffs' argument is that the Court recently considered—and rejected—the very same argument.  In *Rajamin*, the Court affirmed the dismissal, for lack of standing, of a complaint brought by mortgagors against several trusts and their trustee.  *See* 757 F.3d at 81.  The mortgagors in *Rajamin* asserted that, because of alleged violations of PSAs, the trusts did not actually own the mortgagors' loans and mortgages and were not the proper parties to receive and collect payments.  *See id*. at 83-85.  The mortgagors "argue[d] that assignments failing to comply with the PSAs violated laws governing trusts."  *Id*. at 87.

Calling the mortgagors' reliance on trust law "misplaced," the *Rajamin* Court held that, "under New York law*, only the intended beneficiary of a private trust may enforce the terms of the trust*."  *Id*. at 87-88 (emphasis added).  The Court therefore affirmed the dismissal of a challenge premised upon alleged violations of PSAs.  *Id*. at 90.  Notably, the Court grounded its decision in three New York appellate-court cases that had reached that conclusion.  *Id*. (citing *In re Estate of McManus*, 390 N.E.2d 773 (N.Y. 1979); *Cashman v. Petrie*, 201 N.E. 24 (N.Y. 1964); and *Naversen v. Gaillard*, 831 N.Y.S.2d 258 (N.Y. App. Div. 2007)).  These are the exact same New York cases that the district court relied upon to

13

dismiss Plaintiffs' complaint here. *See* SA7. Plaintiffs do not cite—much less

analyze or distinguish—these three decisions in their opening brief.[7]

---

[7] *Rajamin* is consistent with the conclusion reached by every federal appellate court that has considered the issue that Defendants could identify. *See, e.g.*, *Cornelius v. Bank of Am., N.A.*, 2014 WL 4747332, at *3 (11th Cir. Sept. 25, 2014) (holding that borrower lacks standing to contest the validity of the transfer or assignment of the loan documents based upon PSA provisions); *Dauenhauer v. Bank of N.Y. Mellon*, 562 F. App'x 473, 480 (6th Cir. 2014) (holding that borrowers lack standing to assert violations of a PSA); *Butler v. Deutsche Bank Trust Co. Am.*, 748 F.3d 28, 38 (1st Cir. 2014) (concluding that borrower lacked standing to challenge trustee's possession of mortgage based upon alleged violations of the PSA); *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 228 (5th Cir. 2013) (affirming dismissal of claim by plaintiff/mortgagor against RMBS trustee seeking to enjoin a foreclosure based upon the theory that the mortgage assignment was invalid because it was recorded after the closing date in the PSA because "[plaintiffs] concede that they are not [a] party to the PSA, they have no right to enforce its terms unless they are its intended third-party beneficiaries"); *Robinson v. Select Portfolio Servicing, Inc.*, 522 F. App'x 309, 312-13 (6th Cir. 2013) (concluding that plaintiff/mortgagors lacked standing to allege unfair practices against RMBS trustee challenging the assignment of their mortgage based upon alleged noncompliance with a PSA (even though their mortgage was allegedly added to the RMBS trust after the closing date specified in PSA) because they were not parties to, or third-party beneficiaries of, the assignment or PSA); *Smith v. Litton Loan Servicing, LP*, 517 F. App'x 395, 397 (6th Cir. 2013) (affirming dismissal of claims asserting that RMBS trustee did not own plaintiff's mortgage loan because assignment of the mortgage to the trust occurred after the closing date specified in the PSA; plaintiff lacked standing to assert such claims because he "was neither a party nor a third-party beneficiary to the [PSA], so even if its terms were violated, [plaintiff] may not challenge compliance with the [PSA]"); *Karnatcheva v. JP Morgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013) (holding that plaintiff/mortgagors lacked standing to assert a declaratory-judgment claim challenging the assignment of their mortgage loan based upon alleged noncompliance with a PSA because they are not parties to, or third party beneficiaries of, the PSA); *In re Cook*, 457 F.3d 561, 567-68 (6th Cir. 2006) (affirming dismissal of a claim against RMBS trustee seeking a declaration that the trustee did not have a perfected security interest in the property because of alleged noncompliance with the "Trust Agreement," which required the

14

Plaintiffs invite the Court to adopt a different construction of New York trust law, that is, that non-beneficiaries (here: Plaintiffs/borrowers) may enforce the terms of a trust agreement (here: the PSAs). App. Br. at 7, 16-23. Plaintiffs rely upon older decisions or decisions from inferior appellate courts for this proposition, but those decisions are factually distinguishable in that they were initiated by a trustee, a beneficiary, or a party that had engaged in a direct transaction with a trust or trustee.[8] None of the cases involved a PSA. In any event, the Court is obliged to follow the *Rajamin* panel's construction of New York trust law, which squarely rejected Plaintiffs' argument. *See, e.g.*, *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014) (acknowledging that a panel of the Court is "'bound by the decisions of prior panels until such time

---

assignment to be recorded, because plaintiff lacked standing to enforce the Trust Agreement).

[8]    *See Dye v. Lincoln Rochester Trust Co.*, 334 N.Y.S.2d 402 (N.Y. App. Div. 1972) (trustee as plaintiff); *Suarez v. DeMontigny*, 37 N.Y.S. 503 (N.Y. App. Div. 1896) (creditor plaintiff seeking to foreclose on a trustee-managed property in which it believed it acquired an interest); *39 Cortlandt Street Corp. v. Meyer Lambert*, 205 N.Y.S. 161 (N.Y. App. Div. 1924) (corporate successor of trustee as plaintiff); *In re Mills*, 50 N.Y.S. 966 (N.Y. Sup. Ct. 1891) (trustee/beneficiary as movant); *Allison & Ver Valen Co. v. McNee*, 9 N.Y.S.2d 708 (N.Y. Sup. Ct. 1939) (creditor plaintiff seeking to foreclose a mechanics lien on a trustee-managed property in which it believed it acquired an interest); *Boscowitz v. Held*, 43 N.Y.S. 818 (N.Y. Sup. Ct. 1896) (trustee suing to enforce purchase of trust assets); *Priessenger v. Sharp*, 14 N.Y.S. 372 (N.Y. Gen. Term 1891) (plaintiff sued to recover the purchase price of trust property that the trustees sold to him, but they lacked authority to convey); *In re Pepi*, No. 266193, 1996 WL 34571234 (N.Y. Sur. June 13, 1996) (trustee as plaintiff).

as they are overruled either by an *en banc* panel of our Court or by the Supreme Court'") (quoting *In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010)).  The Court should go no further to reject Plaintiffs' appeal.[9]

        2.     Plaintiffs' Reliance on New York Estates, Powers and Trusts Law § 7-2.4 Is Misplaced

Plaintiffs dedicate a significant portion of their brief to the argument that the alleged violations of the terms of the PSAs render the trusts "void" under EPTL § 7-2.4.[10]  App. Br. at 8, 10-11, 16, 24-32.  Although not entirely clear from their brief, Plaintiffs appear to argue that because the PSAs here were allegedly void under EPTL § 7-2.4, that provision confers upon them standing to sue.  This argument is unpersuasive.

As an initial matter, resolution of the standing issue does not turn upon whether the provisions of the PSAs were violated and thus the Trusts were "void."

---

[9]    In their opening brief, Plaintiffs occasionally suggest that *Rajamin* was incorrectly decided, *see* App. Br. at 10, and at other times suggest, by contrast, that Plaintiffs' case is distinguishable from *Rajamin*, which allegedly did not involve "acts of [the] trustee in contravention [of] the instrument creating the trust," *see id.* at 8.  As to the former point, the panel is obliged to follow *Rajamin* no matter how firm Plaintiffs' belief that it was the wrong outcome.  As to the latter,  Plaintiffs' attempt to distinguish *Rajamin*, which involved an action by mortgagors asserting that the assignments of their mortgages violated PSAs, is simply unpersuasive. The operative facts and indeed even the theories at issue—that assignment of mortgage loans violated PSAs—are the same here.

[10]    EPTL § 7-2.4 provides: "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

As the *Rajamin* Court recognized, "[w]here the challengers to a trustee's actions are not beneficiaries, and hence lack standing, the court 'need not decide whether the conduct of the trustee comported with the terms of the trust.'" 757 F.3d at 88 (quoting *McManus*, 390 N.E.2d at 774)). Thus, when assessing a non-beneficiary's standing to assert violations of a trust agreement, it makes no difference whether those alleged violations rendered a trustee's acts "void" or "voidable."

To be sure, the *Rajamin* Court acknowledged that several non-binding cases have recognized that a borrower may raise a defense to an assignment if that defense makes the assignment void. *Id*. at 90-91 (citing *Glaski v. Bank of Am., Nat'l Assoc.*, 160 Cal. Rptr. 3d 449, 461-62 (Cal. Ct. App. 2013) and *Wells Fargo Bank, Nat'l Assoc. v. Erobobo*, 39 Misc.3d 1220(A) (N.Y. Sup. Ct. 2013)). But even if violations of the PSAs that Plaintiffs argue render the Trusts "void" were relevant to the standing analysis, the *Rajamin* Court nonetheless explained that "the weight of New York authority is contrary to plaintiffs' contention that any failure to comply with the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law." *Id*. at 88. That is because "[u]nder New York law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries." *Id*. (citing *King v. Talbot*, 40 N.Y. 76, 90 (N.Y. 1869); *Mooney v. Madden*, 597 N.Y.S.2d 775, 776 (N.Y. App.

17

Div. 1993), *lv. to appeal dismissed*, 632 N.E.2d 463 (1993); *Washburn v. Rainier*, 134 N.Y.S. 301, 304 (N.Y. App. Div. 1907); *Hine v. Hine*,103 N.Y.S 535, 540 (N.Y. App. Div. 1907); *English v. McIntyre*, 51 N.Y.S. 697, 704 (N.Y. App. Div. 1898)); *see also* 106 N.Y. Jur. 2d *Trusts* § 431 (2013).

Numerous other, more recent cases have similarly concluded that, under EPTL § 7-2.4, the acts of a trustee in contravention of the trust agreement render the trustee's acts merely voidable, not void, subject to ratification by a beneficiary, and therefore immune to challenge by non-beneficiaries. *See, e.g.*, *Berezovskaya v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 4471560, at *6-*7 (E.D.N.Y. Aug. 1, 2014); *Schaefer-Ung v. U.S. Bank Nat'l Assoc.*, 2014 WL 2619555, at *7-*8 (Mass. Land Ct. June 20, 2014); *In re Jepson*, 2014 WL 1884719, at *5-*6 (N.D. Ill. May 9, 2014); *Banares v. Wells Fargo Bank*, 2014 WL 985532, at *4 (N.D. Cal. Mar. 7, 2014); *Wolff v. Bank of New York Mellon*, 997 F. Supp. 2d 964, 974-75 (D. Minn. 2014); *Boza v. U.S. Bank Nat'l Assoc.*, 2013 WL 5943160, at *5 (C.D. Cal. Oct. 28, 2013); *Moss v. Wells Fargo Bank, Nat'l Assoc.*, 2013 WL 8179714, at *6-*7 (E.D. Mich. Jan. 22, 2013). The conclusion of these courts is not simply judicial gloss on otherwise plain text: EPTL § 7-2.4 by its own terms provides that certain acts are void, "except as authorized by . . . law."

Consistent with this authority, the district court did not err in explaining, as an alternative basis for its standing conclusion, that "even assuming that the

transfer of Plaintiffs' mortgages to their respective trusts violated the terms of their

respective PSAs, the after-the-deadline transactions would merely be voidable at

the election of one or more of the parties—not void." SA10. Section 7-2.4 does

not confer standing on Plaintiffs, as non-beneficiaries of the RMBS trusts, to allege

violations of the PSAs that created the trusts.

### 3. Plaintiffs' Other Arguments Are Unavailing

The remainder of Plantiffs' arguments are unintelligible, were not raised

below, or were rejected by the Court in *Rajamin*.

For example, Plaintiffs argue that the Trusts were not validly formed

because Plaintiffs' mortgage loans allegedly were not assigned to the Trusts until

after the closing dates of the PSAs (again, an issue hinging upon compliance with

the PSAs).[11] App. Br. at 35-36. This Court in *Rajamin* described this and similar

theories as: "The Nothing–Was–Transferred and Related Theories." 757 F.3d

at 90. The *Rajamin* court rejected each of those theories. *Id.* at 90-92.

One such theory that this Court rejected in *Rajamin* is identical to Plaintiffs'

theory here (A57-58):

> we reject plaintiffs' contention that the assignments of
> some of plaintiffs' mortgages were void because the
> assignments were recorded after the closing dates of the
> Defendant Trusts . . . . To the extent that plaintiffs argue

---

[11] Plaintiffs base this argument upon EPTL § 7-1.18 (entitled, according to
Plaintiffs, "Funding of lifetime trust"), but fail to explain how this section applies
to RMBS trusts.

19

> that these assignments violated the PSAs, the argument, for reasons already discussed, is not one that plaintiffs have standing to make . . . . The PSAs themselves were sufficient to assign plaintiffs' obligations to [the trustee] as of the assignments' effective dates [citing § 2.01(a) of a PSA in that case[12]] . . . . The subsequent recording of mortgage assignments does not imply that the promissory notes and security interests had not been effectively assigned under the PSAs.

*Rajamin*, 757 F.2d at 91.

Similarly, Plaintiffs argue that the "actions of the trustee that negatively affect the trust, such as the failure to transfer assets to the trust by the closing date as prescribed by the [PSAs], will destroy the [Real Estate Mortgage Investment Conduit] status of the trust under 26 U.S.C.A. § 860 et seq." App. Br. at 33-34. The Trusts' REMIC status is not, and never was, in jeopardy. The premise of Plaintiffs' argument—that the Trusts' assets were not conveyed to the Trusts before the closing dates of the PSAs—is mistaken. As this Court held in *Rajamin*, the mortgage loans at issue were conveyed to the Trusts by virtue of the PSAs themselves (in § 2.01(a), A135). *Rajamin*, 757 F.2d at 91. Thus, as of the closing dates in the PSAs, the Trustees became the legal owners and holders of Plaintiffs' mortgage loans. Accordingly, the Trusts' REMIC status was never in jeopardy because no new assets were conveyed to the Trusts after the closing dates of the PSAs.

---

[12] The PSA contained in Plaintiffs' Appendix contains this same provision (Section 2.01(a)). *See* A135.

20

Additionally, contrary to their arguments that the PSAs are not agreements (App. Br. at 11-16), Plaintiffs attempt to rely upon an excerpt from one section of a single PSA (A255, Section 10.08 entitled "Limitations on Rights of Certificateholders") to argue that the beneficiaries of the Trusts cannot ratify the acts of the Trustee because they do not have the right to vote on certain topics. App. Br. at 32-34. Plaintiffs' reliance on certain voting rights and control over the Trusts is inapposite to the circumstances presented here, which concern ratification (which can be express or implied). Moreover, even that section provides that beneficiaries shall not have "any right to vote (*except as provided in this Agreement*) . . . ." A255 (emphasis added). As the rest of the PSA makes clear, Plaintiffs' statement that beneficiaries have no right to vote is false.

Moreover, as the Court held in *Rajamin*, even if Plaintiffs had standing to make an argument based upon EPTL § 7-2.4 that an act of the Trustee was void (and they do not), unauthorized acts by trustees are subject to ratification by the trust beneficiaries. *See Rajamin*, 757 F.2d at 88. For all these reasons, and the reasons articulated by the Court in *Rajamin*, Plaintiffs lack standing to bring their claims. The district court's dismissal of the amended complaint should therefore be affirmed.

21

**IV.** **Even Assuming Plaintiffs' Have Prudential Standing, the District Court Did Not Err in Dismissing the Amended Complaint Because Its RICO Claims Are Fatally Flawed**

Alternatively, the Court should affirm the district court's dismissal of the amended complaint on the independent grounds that it (1) fails to show that Plaintiffs meet RICO's heightened standing requirements, (2) lacks sufficient factual material under *Iqbal* and *Twombly* to state a viable substantive RICO claim, (3) lacks sufficient allegations for a RICO conspiracy claim, and (4) is barred by the applicable statute of limitations. We address these arguments in turn.[13]

**A.** **Plaintiffs Failed to Allege an Injury or Causation Sufficient to Establish RICO Standing**

Even if Plaintiffs had prudential standing under New York trust law to assert breaches of the PSAs, the Court should still affirm because Plaintiffs' amended complaint failed to allege sufficient injury or causation to satisfy the independent standing requirements imposed by the RICO Act.

Ordinarily, to satisfy Article III standing, "the plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*,

---

[13]   The district court, having dismissed for lack of prudential standing, did not decide these issues. Nonetheless, this Court may affirm the district court's decision for any reason supported by the record. *See Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 223 (2d Cir. 1991) (collecting cases and observing that "we may affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely").

504 U.S. 555, 560 (1992). But RICO standing "is a more rigorous matter than standing under Article III." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). A RICO plaintiff has standing only when "he has been injured in his business or property by the conduct constituting the RICO violation," and only when his "actual loss becomes clear and definite." *Id.* (internal quotation marks, brackets, and citations omitted). Plaintiffs must also allege "'causation of the injury by the defendant's violation.'" *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)).

1.      Plaintiffs Have Not Suffered a Clear and Definite Injury

Plaintiffs fail to allege any clear and definite injury. Rather, Plaintiffs appear to suggest that they were "injured" because, if they had known of the alleged defects in the conveyance and transfer of their mortgage loans, they could have withheld payment. A59-60, 63.

Plaintiffs' suggestion is mistaken. As a matter of law, a defect in the conveyance and transfer of a Plaintiff's loan does not relieve that plaintiff from the obligation to repay his or her debt. *See, e.g.*, *Velasco v. Sec. Nat'l Mortg. Co.*, 823 F. Supp. 2d 1061, 1067 n.3 (D. Haw. 2011); *Livonia Prop. Holdings, L.L.C. v. Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 737 (E.D. Mich.), *aff'd*, 399 F. App'x 97 (6th Cir. 2010). Taking as true Plaintiffs' allegation that

23

Defendants violated RICO by fraudulently concealing defects in the conveyances and transfers of Plaintiffs' loans, Plaintiffs are no worse off economically than they would have been if their original lenders had continued to hold their loans. They do not allege that Defendants collected payments in excess of what Plaintiffs had agreed to pay under the terms of their mortgage loans, nor that they have been the subject of duplicative demands by *other* lenders related to the same mortgage.[14]

The Court's recent decision in *Rajamin* is again instructive. There, the Court dismissed similar allegations for lack of sufficient injury *under the lower Article III standing requirements*, explaining that "there is no allegation that plaintiffs have paid more than they owed or have been asked to do so." *Rajamin*, 757 F.3d at 85 (observing that "plaintiffs acknowledge that they took out the loans . . . were obligated to repay them, with interest; and they have not pleaded or otherwise suggested that they ever paid defendants more than the amounts due, or that they ever received a bill or demand from any entity other than defendants"). Plaintiffs here made commitments to pay their mortgage loans and agreed to be subject to foreclosure if they defaulted. Because Plaintiffs could not have withheld payment, they cannot claim as a matter of law that they were injured by the alleged

---

[14]   Plaintiffs' amended complaint does contain bald references to "injuries and losses" and "wrongfully foreclosures were effected." *See, e.g.*, A63. But such formulaic legal conclusions unsupported by facts are insufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555.

defects in the conveyance and transfer of their loans. Thus, Plaintiffs have not alleged sufficient injury under RICO's heightened standing requirement.

2.    Plaintiffs Have Not Alleged Proximate Causation

Second, even assuming that Plaintiffs alleged a "clear and definite" actual loss, they failed to allege facts demonstrating that Defendants' alleged predicate acts proximately caused that loss. A RICO plaintiff must allege that "a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)); *see also Lerner*, 318 F.3d at 120 (explaining that, to satisfy the RICO causation requirement, the plaintiff must allege "the defendant's injurious conduct is both the factual and proximate cause of the injury alleged"). Proximate cause requires "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Group*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 268). "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a 'substantial factor in the sequence of responsible causation' and whose injury was 'reasonably foreseeable or anticipated as a natural consequence.'" *Lerner*, 318 F.3d at 123. A plaintiff who does not allege facts showing that his injury was caused directly by a pattern of racketeering activity or

25

by individual RICO predicate acts does not have standing under RICO. *See Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003).

Here, Plaintiffs failed to allege any injury proximately caused by Defendants' alleged predicate acts of racketeering. To the extent that Plaintiffs allege that they were subject to foreclosure or short sale—the only alleged injuries here that could even arguably support the RICO claims—there are insufficient allegations that the injurious conduct (*i.e.*, the alleged racketeering) was the cause for the foreclosures. For example, the amended complaint contains no plausible factual allegations that the foreclosures would not have occurred in absence of the alleged racketeering. Indeed, Plaintiffs have not alleged any facts demonstrating that the alleged defects in the conveyance and transfer of their mortgage loans were a substantial factor in causing the alleged foreclosures. Rather, the alleged foreclosures were proximately caused solely by Plaintiffs' failure to comply with the terms of their mortgage loans, *i.e.*, to make timely payments.[15] Additionally,

---

[15] *See, e.g.*, *Caswell v. JP Morgan Chase Bank, N.A.*, 500 F. App'x 580, 582 (9th Cir. 2012) ("[A]ny alleged failure by Chase to disclose information caused Plaintiff no damage; only her failure to pay the mortgage caused her damage.");*In re Kekauoha-Alisa*, 674 F.3d 1083, 1092-93 (9th Cir. 2012) ("Debtor's losses 'result[ed] from' her default, rather than Lenders' failure to shout out the postponement of the foreclosure."); *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 2013 WL 2444036, at *9 (D.N.J. June 4, 2013) ("The direct cause of the foreclosure proceedings was the Giles' failure to make mortgage payments."); *Casault v. Fed. Nat'l Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1123 (C.D. Cal. Nov. 26, 2012); *Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1109 (D.

26

Plaintiffs have failed to allege facts to demonstrate that any specific defendant's alleged wrongful act was a substantial factor in the causation of any particular plaintiff's alleged injury.

Plaintiffs have not therefore adequately alleged that any alleged predicate act by any Defendant proximately caused any Plaintiff's injury. *See, e.g.*, *Lerner*, 318 F.3d at 123 (observing that "the racketeering activities alleged are not a substantial factor in the chain of causation that led to plaintiffs' losses"); *Bernstein v. Misk*, 948 F. Supp. 228, 240 (E.D.N.Y. 1997) ("'When factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.'") (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994)). Because the alleged racketeering activity could not have caused any injury to Plaintiffs' business or property, Plaintiffs lack standing to bring suit under RICO.

### B. Alternatively, the Court Should Affirm the Dismissal of the Amended Complaint Because It Fails to State a Viable Claim

Even assuming that the Court concludes that Plaintiffs have RICO standing to assert their claims, the district court did not err in dismissing the amended complaint because it fails to state a claim upon which relief could be granted under Rule 12(b)(6).

---

Minn. 2011) ("The foreclosure was caused by Plaintiff's inability to make payments pursuant to the loan agreement.").

As an initial matter, Count Three of the amended complaint asserts a stand-alone cause of action for injunctive relief. But an "[i]njunction is not a separate cause of action; it is a remedy." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010). As such, it cannot survive without a viable substantive claim. *Id*. Moreover, injunctive relief is not available to private plaintiffs under RICO. *See, e.g.*, *Am. Med. Assoc. v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 446 (S.D.N.Y. 2008) ("[T]his Court will not infer that the right to injunctive and declaratory relief exists for private litigants under Section 1964 of RICO."). Although not ruling directly on the issue, this Court has expressed doubt that such relief is possible under RICO. *See Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482, 489 n.20 (2d Cir. 1984) ("It thus seems altogether likely that [RICO] as it now stands was not intended to provide private parties injunctive relief."), *rev'd on other grounds*, 473 U.S. 479 (1985); *Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28-29 (2d Cir. 1983) ("We have the same doubts as to the propriety of private party injunctive relief."). Accordingly, we focus below on the deficiencies in Count One (RICO) and Count Two (RICO Conspiracy) of the amended complaint.

1.  Plaintiffs Fail to Allege That Any Defendant Engaged in Any Predicate Act of "Racketeering," Much Less The "Pattern Of Racketeering" Required to State a Viable RICO Claim

The elements of a violation of section 1962(c) are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Anatian v. Coutts*

*Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999). In a case involving

multiple defendants, the elements of a section 1962(c) violation "must be

established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286,

306 (2d Cir. 2001). To state a claim against a particular defendant, a plaintiff must

sufficiently allege two predicate acts of racketeering committed by that defendant.

*See* 18 U.S.C. § 1961 (providing that a "'pattern of racketeering activity' requires

at least two acts of racketeering activity"); *see also Moss v. Morgan Stanley*, 719

F.2d 5, 17 (2d Cir. 1983).

It is difficult to discern the predicate acts upon which Plaintiffs seek to rely.

Plaintiffs assert that their RICO claims are premised on "prohibited activities under

18 U.S.C. § 391" and "violation[s] of 18 U.S.C. § 1343 (the said acts occurred

th[r]ough mail communications, by fraudulent pretenses, representations in

interstate commerce by executing a scheme or artifice[)]." A62. There is no

provision codified at 18 U.S.C. § 391, meaning Plaintiffs' RICO claims rise or fall

exclusively on an alleged violation of section 1343's prohibition of wire fraud or

section 1341's prohibition of mail fraud. *See* 18 U.S.C. § 1961(1) (defining

"racketeering activity" as including "wire fraud" under section 1343 and "mail

fraud" under section 1341).

When, as here, a plaintiff alleges that violations of the mail or wire fraud

statutes supply the racketeering activity element, the plaintiff must meet the

29

heightened pleading standards of Rule 9(b) of the Federal Rules of Civil

Procedure. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d

Cir. 2008). "The elements of mail and wire fraud are: (1) a scheme to defraud,

(2) money or property as the object of the scheme, and (3) the use of the mails or

wires to further the scheme." *Grimes v. Fremont Gen. Corp.,* 785 F. Supp. 2d 269,

299 n.45 (S.D.N.Y. 2011) (internal quotation marks omitted). A plaintiff's mail or

wire fraud allegations "'should state the contents of the communications, who was

involved, [and] where and when they took place, and [should] explain why they

were fraudulent.'" *Spool*, 520 F.3d at 185 (alterations in original) (quoting *Mills v.*

*Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)). A complaint alleging

mail and wire fraud must also "plead facts that give rise to a strong inference that

the defendant possessed fraudulent intent." *Mills*, 12 F.3d at 1176.

    Plaintiffs' amended complaint fails adequately to allege an act of

racketeering by any Defendant, much less a pattern of such acts. In their amended

complaint, Plaintiffs allege:

> Continuously as listed in Exhibit # 1 at page 5 from the
> date of the PSA closing date, the defendants, to the date
> of foreclosure, short sale or loan modification (Exhibit
> # 1 at Page 7), in each particular case, engaged in
> obtaining by fraud, extortion or deception payments from
> the plaintiffs in every particularly stated case and
> enforced fraudulently, deceptively either way of
> modification or short sale and/or foreclosure the loans
> with the methods above stated. By these methods the
> defendants collected sums and payments that varied from

> 8 payments to 85 payments (See Exhibit # 1 at Page 7)
> and in sums of dollars as listed in Exhibit # 1 at Page 8.
> In addition, to the taking of the value of the house, sold
> in sheriff or other auctions sales after foreclosure.

A62.  Notably, Plaintiffs fail to identify any allegedly fraudulent communications, who made the communications, when the communications were made, what was communicated, why the communications were fraudulent, or how the mails or wires were used in furtherance of an alleged fraud.

Plaintiffs similarly fail to allege, as to any Defendant, facts demonstrating intent to defraud.  Such factual allegations are necessary to state a viable RICO claim.  *See Mills*, 12 F.3d at 1176.  Finally, although Plaintiffs make passing reference throughout the amended complaint to alleged "theft by deception, extortion, and other illegal and fraudulent activities," A62, Plaintiffs fail to allege any facts tending to show that such conduct actually occurred.

The Court should affirm the district court's dismissal of the amended complaint because Plaintiffs failed adequately to allege any act of racketeering by any Defendant.

2.    Plaintiffs Fail to Allege a RICO "Enterprise"

Even assuming that the amended complaint contained sufficient factual material related to racketeering activities, Plaintiffs' RICO claim fails for the independent reason that there are insufficient allegations that any Defendant

31

conducted or participated in the conduct of the affairs of any identifiable RICO enterprise.

Section 1962(c) refers to both a "person" and an "enterprise." *See* 18 U.S.C. § 1962(c) ("It shall be unlawful for any *person* . . . associated with any *enterprise* . . . to conduct or participate, directly or indirectly, in the conduct of such *enterprise's* affairs through a pattern of racketeering activity . . . ." (emphasis added)).  Giving meaning to each word, the Supreme Court has explained that "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  An enterprise may consist of "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"  18 U.S.C. § 1961(4).  Once a plaintiff identifies an enterprise, the plaintiff must also "plead facts from which it can be inferred that each of the defendants participated, directly or indirectly, in the conduct of the enterprise's affairs."  *Elsevier, Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010).

Here, the amended complaint lacks sufficient facts plausibly showing that any Defendant, as a RICO "person," participated in the conduct of the affairs of

any separate "enterprise." For example, under the heading "Enterprise," Plaintiffs

allege generally:

> The corrupt defendants engaged in a pattern of
> racketeering activity individually, through their
> respective banking institution, personnel, agents,
> servicers, corporations and other business institution to
> defraud the plaintiffs through and elaborated scheme that
> use the mechanism of securitization to enforce loans for
> which they were not entitled, knowing that they had not
> such right, concealing it and seeking to foreclose on the
> plaintiffs' property. These acts of concealment and
> fraudulent actions were the sole reason for the creation of
> the racketeering organization.

A61. In the next paragraph, Plaintiffs allege:

> All individually corrupt defendants and their associated
> corporate counterparts as set forth supra, formed an
> enterprise and participated in the pattern of fraud, theft
> by deception, and fraudulent enforcement of loans for
> which they had not right to enforce.

A61. These general, conclusory allegations do not begin to describe what

Defendant is alleged to have participated in conducting the affairs of what separate

enterprise.

Plaintiffs' "association in fact" allegations fare no better. "[F]or an

association of individuals to constitute an enterprise, the individuals must share a

common purpose to engage in a particular fraudulent course of conduct and work

together to achieve such purposes." *First Capital Asset Mgt. v. Satinwood, Inc.*,

385 F.3d 159, 174 (2d Cir. 2004) (internal quotation marks omitted); *see also*

33

*Boyle v. United States*, 556 U.S. 938, 946 (2009) (explaining that an association-in-fact enterprise must have "both interpersonal relationships and a common interest").

The entirety of Plaintiffs' attempt to plead the existence of an "association in fact" is the general, conclusory allegation that Defendants "formed an 'association in fact' enterprise within the meaning of 18 U.S.C. § 1961(4) which with knowledge had their main reason for existence in the criminal corrupt scheme of fraud, theft by deception, extortion, and other illegal and fraudulent activities to steal from and defraud plaintiffs." A61-62. Plaintiffs make no attempt to explain how any Defendant allegedly worked together with others in an alleged scheme to defraud. Without such explanation, Plaintiffs' RICO claim fails. *See Elsevier*, 692 F. Supp. 2d at 307 (dismissing RICO complaint in which "not a single fact [was] pleaded tending to show that the various sets of named defendants . . . had any interpersonal relationships"). The Court should affirm the district court's dismissal of the amended complaint because Plaintiffs have failed to adequately allege a RICO "enterprise."

3.     Plaintiffs Fail to Allege a Viable RICO Conspiracy Claim

Count II of the amended complaint contains a RICO conspiracy claim. A64. This claim necessarily fails because a complaint—like the amended complaint—that fails adequately to allege a substantive RICO violation cannot state a claim for

34

a RICO conspiracy. *See Satinwood*, 385 F.3d at 182; *see also Discon, Inc. v. NYNEX Corp.*, 93 F.2d 1055, 1064 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), *rev'd on other grounds*, 552 U.S. 128 (1998).

Independently, Plaintiffs' RICO conspiracy claim is also doomed by their failure to allege a factual basis sufficient to support a plausible inference that a conspiracy took place. At a minimum, a plaintiff alleging the existence of a RICO conspiracy must allege "some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)).

Here, Plaintiffs' conspiracy allegations alternate between bare recitations of the existence of an agreement,

> The Corrupt Defendants agreed to commit the predicate acts specified in the First Count and to violate 18 U.S.C. § 1962 (c).

A64.

> The Corrupt Defendants' elaborate fraud, and extortion and fraudulent scheme was organized in a manner in which all participants agreed to and in fact, either directly, or indirectly through other participants, conducted the same type of actions that caused the plaintiffs injuries and damages.

A64.

and inscrutable circular reasoning:

> The Corrupt Defendants that participated in the enterprise described in the First Count did so with the common goal of defrauding plaintiffs in each case and globally since the conduct of all defendants whether individually in each particularly case with their agents for that particular case or globally in concert with each other show a common pattern of racketeering, conspiracy of all defendants.

A64.

Each of Plaintiffs' approaches is characterized by the lack of any *factual* allegation against any Defendant. Nowhere do Plaintiffs explain which Defendants agreed with which other Defendants, when the agreement took place, how the agreement came about, or what was agreed upon. In the absence of any such factual material, Plaintiffs cannot state a claim for RICO conspiracy. *See Elsevier*, 692 F. Supp. 2d at 313 (dismissing RICO conspiracy claim where complaint contained "nothing more than a conclusory allegation of an agreement among defendants"). Accordingly, the district court did not err in dismissing the second count of Plaintiffs' amended complaint.

### 4. Plaintiffs' RICO Claims Are Untimely

The Court should affirm the district court's dismissal of the amended complaint for the independent reason that Plaintiffs' RICO and RICO conspiracy claims are untimely. Civil actions under the RICO Act are subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,

36

483 U.S. 143, 156 (1987). The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998) (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988)). As noted above, Plaintiffs' alleged injury consists of mortgage loan payments that Defendants allegedly "fraudulently took" from Plaintiffs "on a monthly basis *from the date of the PSA stated closing date* to the time that each plaintiff came to stop his/her monthly payment of the note . . . ." A59 (emphasis added). Plaintiffs must have been aware that they were making their mortgage loan payments, and they do not allege otherwise. Accordingly, under Plaintiffs' pleaded theory of the case, each Plaintiff's alleged RICO claim accrued upon the date of the first monthly payment following the closing date established by the PSA under which each Plaintiff's loan is held in trust.

Plaintiffs allege the "PSA stated closing date" applicable to each of their loans in Exhibit 1 to the amended complaint. A57-58, 73. The latest of these dates is September 28, 2007. A73. The original complaint in this action was filed on January 25, 2013, more than five years after the last of Plaintiffs' alleged RICO claims accrued. A25. Accordingly, the First and Second Counts of Plaintiffs' amended complaint are barred by the statute of limitations, and there was no error in the district court's dismissal of the amended complaint.

**V.** **Alternatively, the Court Should Affirm Dismissal of All Plaintiffs Except Anh Nguyet Tran on the Basis of Improper Permissive Joinder Under Rule 20 of the Federal Rules of Civil Procedure**

Even if the Plaintiffs have standing and have stated viable claims, the Court should affirm the dismissal of the amended complaint (albeit without prejudice) as to all Plaintiffs with the exception of Plaintiff Anh Nguyet Tran. Under the rules, persons may join in one action when they assert a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences" and when a "question of fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

Here, Plaintiffs entered into different mortgage loan transactions at different times with different lenders and are at different stages of the foreclosure process. Plaintiffs' claims concern properties in eight different states. A73. The claims are based on dozens of different PSAs creating dozens of trusts. A69-71. Plaintiffs lack the unitary transaction, occurrence, or series of transactions or occurrences for permissive joinder under the circumstances as alleged in the amended complaint. *See, e.g.*, *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557-58 (S.D.N.Y. 2013) (severing similar claims); *Adams v. U.S. Bank, N.A.*, 2013 WL 5437060, at *4 (E.D.N.Y. Sept. 27, 2013) (same); *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 229-30 (E.D.N.Y. 2013) (same).

We anticipate that Plaintiffs may contend that permissive joinder is warranted by their conclusory allegations of "concerted effort" and conspiracy among the Defendants, but this view is mistaken. As in *Kalie*, Plaintiffs' amended complaint is "fatally indistinct as to the roles played by the particular defendants or the dealings between particular defendants and particular plaintiffs." 297 F.R.D. at 558. Indeed, Plaintiffs here concede that "[t]he cases vary among the plaintiffs," A59, and, as in *Kalie*, fail to allege any facts linking "any particular loan to any particular type of wrongdoing by any particular defendant . . . ." 297 F.R.D. at 558. Absent factual allegations outlining which Defendants are alleged to have committed what wrongful acts against which Plaintiffs, the Court cannot conclude that the Plaintiffs assert a right to relief arising from the same transaction, occurrence, or series of transactions or occurrences. Accordingly, if it does not affirm the dismissal outright, the Court should at least direct the district court to sever all Plaintiffs with the exception of Anh Nguyet Tran.

## CONCLUSION

For these reasons, the Court should affirm the judgment of the district court. Alternatively, in the event the Court concludes that Plaintiffs have standing and have stated viable RICO claims, the Court should nonetheless affirm the district court's dismissal of the amended complaint as to all Plaintiffs except Anh Nguyet Tran.

Dated:  October 14, 2014                   DORSEY & WHITNEY LLP

By:  /s/ Eric R. Sherman

Eric R. Sherman
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  612-340-2600
sherman.eric@dorsey.com

Christopher G. Karagheuzoff
51 West 52nd Street
New York, NY 10019
Telephone:  212-415-9200
karagheuzoff.christopher@dorsey.com

*Attorneys for Defendants-Appellees U.S. Bank National Association as Trustee of the Citigroup Mortgage Loan Trust 2007-6, U.S. Bank National Association as Trustee of the Lehman Mortgage Trust 2007-6, U.S. Bank National Association as Trustee of the Merrill Lynch Mortgage Investors Trust, Series 2006-HE6, U.S. Bank National Association as Trustee of the GSAA Home Equity Trust 2006-12, U.S. Bank National Association as Indenture Trustee of the Citigroup Mortgage Loan Trust 2005-11, U.S. Bank National Association as Trustee of the First Franklin Mortgage Loan Trust 2005-FF9, U.S. Bank National Association as Trustee of the First Franklin Mortgage Loan Trust, Series 2007-FF2, U.S. Bank National Association as Trustee of the First Franklin Mortgage Loan Trust,*

*Series 2007-FFC, U.S. Bank National Association as Trustee of the Structured Adjustable Rate Mortgage Loan Trust 2005-8XS, U.S. Bank National Association as Trustee of the Lehman XS Trust, Series 2005-2, U.S. Bank National Association as Trustee of the Banc of America Funding 2006-6 Trust, U.S. Bank National Association as Trustee of the Bear Stearns ALT-A Trust 2006-3, and U.S. Bank National Association as Trustee of the CSMC Mortgage-Backed Trust Series 2006-5*

By: /s/ Scott H. Kaiser

Christine B. Cesare
Scott H. Kaiser
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000
cbcesare@bryancave.com
scott.kaiser@bryancave.com

Nafiz Cekirge
BRYAN CAVE LLP
120 Broadway, Suite 300
Los Angeles, CA 90401
(310) 576-2100
nafiz.cekirge@bryancave.com

*Attorneys for Defendants-Appellees The
Bank of New York Mellon as Trustee of
the Alternative Loan Trust 2005-17, The
Bank of New York Mellon as Trustee of
the CHL Mortgage Pass-Through Trust
2007-HYB2, The Bank of New York
Mellon as Trustee of the Alternative
Loan Trust 2006-OA6, The Bank of New
York Mellon as Trustee of the CHL
Mortgage Pass-Through Trust 2005-
HYB6, The Bank of New York Mellon as
Trustee of the Alternative Loan Trust
2005-58, The Bank of New York Mellon
as Trustee of the CHL Mortgage Pass-
Through Trust 2007-HY6, The Bank of
New York Mellon as trustee of the CHL
Mortgage Pass-Through Trust 2005-11,
The Bank of New York Mellon as trustee
of the CHL Mortgage Pass-Through
Trust 2007-3, The Bank of New York
Mellon as trustee of the CWHEQ Home*

*Equity Loan Trust, Series 2007-S2, The Bank of New York Mellon as trustee of the Bear Stearns ALT-A Trust 2005-4, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006- OA19, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2005-22T1, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2006-HYB5, and The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006-29T1*

By: /s/ Brian S. McGrath

Allison J. Schoenthal
Lisa J. Fried
Brian S. McGrath
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
allison.schoenthal@hoganlovells.com
lisa.fried@hoganlovells.com
brian.mcgrath@hoganlovells.com

*Attorneys for Defendants-Appellees
HSBC Bank USA National Association
as Trustee of the Opteum Mortgage
Acceptance Corp. 2005-1, HSBC Bank
USA National Association as Trustee of
the Merrill Lynch Alternative Note Asset
Trust 2007-A2, Wells Fargo Bank
National Association as Trustee of the
Securitized Asset Backed Receivables
LLC Trust 2005-HE1, and Wells Fargo
Bank National Association as Trustee of
the GreenPoint Mortgage Funding
Trust 2005-AR4*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,698 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(A)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman 14-point font.

/s/ Eric R. Sherman
Eric R. Sherman

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Brief of

Defendants-Appellees was served upon counsel of record for Plaintiffs-Appellants

by operation of the Court's ECF system on October 16, 2014.

/s/ Eric R. Sherman
Eric R. Sherman